# Third District Court of Appeal

## State of Florida

Opinion filed December 2, 2020.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-532
Lower Tribunal No. 19F-04197
_____

**G.R., etc.,**
Appellant,

vs.

**Agency for Persons with Disabilities, etc., et al.,**
Appellees.

An Appeal from the State of Florida, Department of Children and Families, Office of Appeal Hearings.

Manuel Ramirez, Legal Guardian for appellant, G.R.

Jada Williams (Tallahassee), Senior Attorney, for appellee Agency for Persons with Disabilities.

Before EMAS, C.J., and HENDON and MILLER, JJ.

EMAS, C.J.

G.R. appeals from a final order of the Florida Department of Children and Families' Office of Appeal Hearings, affirming a decision by the Agency for Persons with Disabilities ("the Agency") to deny G.R.'s application for enrollment in a Medicare waiver program for persons with disabilities. We affirm.

**BACKGROUND AND PROCEEDINGS**

On February 1, 2019, forty-two-year-old G.R. applied through his legal guardian for enrollment in the Individual Budgeting Home and Community Based Services ("HCBS") waiver, which provides funding for persons with specified developmental disabilities under section 393.063, Florida Statutes (2019). This was at least the third time G.R. had applied for such benefits, as he was denied benefits on the same basis in 2009 and 2012.

The Agency again denied G.R.'s application, concluding that he was not eligible for the benefits because the documents submitted on G.R.'s behalf failed to establish he had one of the defined disabilities under section 393.063(24). G.R. sought review of this denial, asserting, *inter alia,* that the Agency failed to consider some of the relevant information pertaining to his intellectual disability. Following a review, the Department of Children and Families' Office of Appeal Hearings issued a final order denying G.R.'s administrative appeal. This appeal followed.

**DISCUSSION AND ANALYSIS**

2

We review an agency's conclusions of law de novo and we review the record to determine whether competent substantial evidence supports the agency's decision. A.C. v. Agency for Health Care Admin., 44 Fla. L. Weekly D2279 at *4 (Fla. 3d DCA 2019). In doing so, "we give no deference to agency interpretations of statutes or rules." Id. (citing MB Doral, LLC v. Dep't of Bus. & Prof'l Regulation, Div. of Alcoholic Beverages & Tobacco, 295 So. 3d 850, 853 (Fla. 1st DCA 2020) (noting: "With the passage of article V, section 21 of the Florida Constitution, the previously afforded deference to the agency's interpretation of the statutes it implements has been abolished; our review is de novo.")). See also M.T. v. Agency for Persons with Disabilities, 212 So. 3d 413 (Fla. 3d DCA 2016); A.W. v. Agency for Persons with Disabilities, 288 So. 3d 91 (Fla. 1st DCA 2019).

"A petitioner whose application for benefits or payments is denied must establish her position 'by a preponderance of the evidence, to the satisfaction of the hearing officer.'" A.W., 288 So. 3d 93 (quoting Fla. Admin. Code R. 65-2.060(1)). Chapter 393 of the Florida Statutes establishes the framework for providing benefits to individuals with developmental disabilities. To be eligible for such benefits, an individual must qualify as a statutorily defined individual with a "developmental disability." Section 393.063(12) defines this term as "a disorder or syndrome that is attributable to intellectual disability . . . that manifests before the age of 18; and that

3

constitutes a substantial handicap that can reasonably be expected to continue indefinitely."

The term "intellectual disability" is further defined in section 393.063(24) to mean "significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior which manifests before the age of 18 and can reasonably be expected to continue indefinitely." See also Fla. Admin. Code R. 65G-4.014 and 65G-4.017 (further delineating eligibility requirements). Of note, a full scale IQ score of 70 or below on an individually administered intelligence test is considered an intellectual disability, but in assessing this score, the Agency may rely on clinical judgment "when there is a great deal of variability between IQ scores on different IQ tests or different administrations of the same IQ test." Fla. Admin. Code R. 65G-4.017(3).

The Agency denied G.R.'s application because it determined that he did not meet the requisite definition of an individual with an intellectual disability. Specifically, the Agency noted that there was no reliable record during G.R.'s developmental years consistent with an intellectual deficit. The hearing officer, on appeal, agreed, finding that none of the records provided support a finding of intellectual disability manifesting before the age of 18, and that all information regarding G.R.'s status prior to the age of 18 fails to reference any testing methods to support a diagnosis of "learning deficits" or "mental retardation," facts which the

4

hearing officer nevertheless determined were contradicted by the fact that G.R. obtained a G.E.D., had average grades, and a teacher recommendation letter indicating he had "average intellectual capacity." As indicated earlier, G.R. had the burden to establish his eligibility by a preponderance of the evidence. See M.T., 212 So. 3d at 415; Fla. Admin. Code R. 65-2.060(1)).

Dr. Arias, who performed the evaluation of G.R. in 2012, testified that, at the time, G.R. was thirty-five years old. Dr. Arias diagnosed G.R. with paranoid schizophrenia and borderline intellectual function. For the intellectual testing, Dr. Arias used the Wechsler Adult Intelligent Scale Fourth Edition test, and G.R.'s full scale composite result was an IQ of 57. However, Dr. Arias testified that G.R.'s reasoning index was the best indicator of his intellectual capacity, and that this put him at borderline intellectual levels, not an intellectual disability. He believed that some of the lower scores on the subsections of the test were attributable to G.R.'s mental illness. Dr. Arias reached the same conclusion when he again reviewed the more recent relevant documentation prior to the hearing.

G.R. contends that the hearing officer did not consider the full-scale IQ score of 57 conducted by Dr. Arias in 2012, using the WAIS-IV method, a presumptively valid test under Florida Administrative Code Rule 65G-4.017. But Dr. Arias himself, in the test report, indicated that a score of 75 was "the best estimate of his current functioning." G.R. counters that Dr. Arias' opinion in this regard should be

disregarded and only the overall score of 57 should have been deemed relevant to the hearing officer's determination. We do not agree with G.R.'s contentions and, as a careful review of the record and order reveals, the hearing officer properly considered all the competent evidence it was presented with, including Dr. Arias' report. In doing so, the court found credible Dr. Arias' testimony that G.R. really has an IQ of about 75, despite the full-scale score of 57. That conclusion is supported by competent substantial evidence, and no error was committed by the hearing officer in arriving at this conclusion.

The other documents submitted by G.R. were either not presumptively valid under Rule 65G-4.017, or did not properly diagnose G.R. with an intellectual disability that manifested before the age of eighteen, as required by section 393.063.[1]

---

[1] We reject G.R's argument that our prior decision in M.T. v. Agency for Persons with Disabilities, 212 So. 3d 413 (Fla. 3d DCA 2016) compels reversal. In that case, M.T. provided certain records from within M.T.'s developmental years demonstrating M.T. had an intellectual disability that manifested before age eighteen. Nevertheless, the Agency argued (and the hearing officer found) that the statutory definition of "intellectual disability" required the applicant to provide an IQ test administered before the age of eighteen. While M.T. presented other records to establish his intellectual disability within the meaning of the statute, the Agency denied M.T.'s application in the absence of the requisite IQ test. We reversed, and held that the Agency erred in requiring an applicant to provide proof of an IQ test administered before the applicant turns eighteen. Instead, an IQ test is simply one way in which an applicant can meet the definition for intellectual disability and establish eligibility for the HCBS Waiver program. In the instant case, by contrast, G.R. had neither a qualifying IQ test nor any other evidence found sufficiently reliable or credible to support G.R.'s claim of an intellectual disability manifesting before the age of eighteen.

The hearing officer's determinations in this regard were also supported by competent substantial evidence, and provide no basis for reversal. To the extent G.R. provided some documents or other evidence in an effort to meet his burden or to overcome the evidence presented by the Agency, the hearing officer properly weighed the evidence presented, made credibility determinations as necessary, and made findings supported by competent substantial evidence. We find no error in these determinations or in the final order on appeal.

Affirmed.